1                IN THE UNITED STATES DISTRICT COURT

2               FOR THE SOUTHERN DISTRICT OF TEXAS

3                         MCALLEN DIVISION

4   UNITED STATES OF AMERICA      §     CASE NO. 7:19-CR-600-1
                                  §     MCALLEN, TEXAS
5   VERSUS                        §     MONDAY,
                                  §     APRIL 8, 2019
6   GERARDO TAFOLLA               §     9:00 A.M. TO 9:45 A.M.

7
                              ARRAIGNMENT
8                  (PARTIAL - EXCLUDES SEALED PORTION)

9               BEFORE THE HONORABLE MICAELA ALVAREZ
                    UNITED STATES DISTRICT JUDGE
10


11
        APPEARANCES:                    SEE NEXT PAGE
12
        COURT RECORDER:                 XAVIER AVALOS
13

14

15

16

17

18

19

20               TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                    935 ELDRIDGE ROAD, #144
22                    SUGAR LAND, TEXAS 77478
              Tel: 281-277-5325 ▼ Fax: 281-277-0946
23                 www.judicialtranscribers.com

24
        Proceedings recorded by electronic sound recording;
25          transcript produced by transcription service.

1                          <u>APPEARANCES</u>:

2

3   FOR THE GOVERNMENT:            US ATTORNEY'S OFFICE
                                   Robert Lopez, Esq.
4                                  1701 w. Highway 83
                                   Suite 600
5                                  McAllen, Texas  78501
                                   956-618-8010
6
                                   US DEPARTMENT OF JUSTICE
7                                  PUBLIC INTEGRITY DIVISION
                                   Peter M. Nothstein, Esq.
8                                  1400 New York Avenue, NW
                                   12th Floor
9                                  Washington, DC  20005
                                   202-510-1549
10

11  FOR DEFENDANT TAFOLLA:         LAW OFFICE OF ALMA GARZA, PC
                                   Alma Rosa Garza, Esq.
12                                 320 W. McIntyre
                                   Suite 3
13                                 Edinburg, Texas  78541
                                   956-383-8131
14

15

16  ALSO ATTENDING:               US PROBATION OFFICE
                                   Braulio Carvajan
17

18

19

20

21

22

23

24

25

1          <u>MCALLEN, TEXAS; MONDAY, APRIL 8, 2019; 9:00 A.M.</u>

2          THE COURT:  This is Case No. 19-600, the

3   United States versus Gerardo Tafolla.

4          MR. LOPEZ:  Good morning, Your Honor.

5          Bob Lopez, on behalf of the Government, and

6   Peter Nothstein from the Department of Justice.

7          THE COURT:  Thank you.

8          MR. NOTHSTEIN:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10          MS. GARZA:  Good morning, Your Honor.

11          Alma Garza for Mr. Gerardo Tafolla.  Judge, he's

12   present and ready.

13          THE COURT:  Okay.  And I understand he is ready to

14   enter a plea to the Information; is that correct?

15          MR. LOPEZ:  That's correct, Your Honor.

16          MS. GARZA:  That's correct, Your Honor.

17          THE COURT:  Okay.  Thank you.

18          And Mr. Tafolla, I understand that you are going

19   to be entering a plea to the Information here so I'm going

20   to go through a lot to cover with you so I'm going to begin

21   by asking you to raise your right hand to be sworn in.

22      (Defendant sworn.)

23          THE COURT:  All right.  Just let -- first of all,

24   I'll give you some brief instructions, Mr. Tafolla.  It is

25   important that you understand everything that I cover with

1  you.  If you do not, please make sure to let me know.  It

2  doesn't matter how simple the question is, if you need me to

3  repeat it, let me know.  More than anything else, once we

4  conclude this hearing, it is very difficult to come back

5  claiming you did not understand what was covered with you

6  here today.

7          Do you understand that?

8          DEFENDANT TAFOLLA:  Yes, Judge.

9          THE COURT:  All right.  Let me get a little bit of

10  background information from you.

11          First of all, how old are you?

12          DEFENDANT TAFOLLA:  Fifty-two.

13          THE COURT:  What kind of schooling do you have?

14          DEFENDANT TAFOLLA:  High school, went to Pan Am

15  and some college, got about 91 hours total.

16          THE COURT:  Okay.  Are you now under the influence

17  of any alcohol, drugs or medication?

18          DEFENDANT TAFOLLA:  No, Judge.

19          THE COURT:  Within the last 48 hours, have you

20  taken any alcohol, drugs or medication?

21          DEFENDANT TAFOLLA:  No, Judge.

22          THE COURT:  Have you ever been under the care of

23  any doctor, psychologist, psychiatrist, any kind of mental

24  health professional for any mental health issues?

25          DEFENDANT TAFOLLA:  No.

1          THE COURT:  I know that this Information was just

2    very recently filed.

3          Have you had enough time to talk with your

4    attorney about the charge that you are facing?

5          DEFENDANT TAFOLLA:  Yes, Judge.

6          THE COURT:  Okay.  Let me go through that charge

7    with you.  I'm going to read first of all to you the

8    Information itself and then I'm going to explain it to you

9    in more basic terms.

10          So the Information charges that from at least in

11   or about August 2011 through at least October 2014, in the

12   Southern District of Texas and elsewhere within the

13   jurisdiction of the Court, that you being an agent of a

14   local government, namely, a commissioner for the City of

15   Weslaco, a local government that received benefits and

16   access of $10,000 pursuant to a federal program involving a

17   grant contract subsidy, loan guarantee and other form of

18   federal assistance in each year from 2011 through 2014, that

19   you did corruptly solicit, demand, accept and agree to

20   accept a thing of value, that is, United States currency

21   from a person intending to be influenced and rewarded in

22   connection with a business, transaction and series of

23   transactions of the City of Weslaco, Texas valued at 5,000

24   or more, that is, the contracts for construction and

25   rehabilitation of water treatment facilities in the City of

1   Weslaco, Texas, in violation of Title 18, United States

2   Code, Section 66(a)(1)(B).

3           So there's a lot there, Mr. Tafolla, but let me

4   sort of break it down into the stated parts.

5           So first of all, for this kind of charge, the

6   Government would have to prove that during this time in

7   question that you were the agent of a local government here,

8   that is, a commissioner.

9           Also, that the local government here, the City of

10  Weslaco, was a government that received from the Federal

11  Government some sort of financial assistance either by

12  grant, contracts or some other arrangement that was in at

13  least the amount of -- or in more than the amount of $10,000

14  per year.  And here that is from 2011 to 2014.

15          That you then -- do you have a question there?  I

16  may have misspoken but 2011 to 2014.

17          Was there a question?

18          DEFENDANT TAFOLLA:  I thought you said every year.

19          MS. GARZA:  He thought you said that he received

20  $10,000 every year.

21          THE COURT:  No, the Government itself.

22          DEFENDANT TAFOLLA:  Okay.

23          THE COURT:  So you were an agent of the

24  Government, that is, you were a commissioner.  The

25  Government, who was the City of Weslaco, and the Government

1  received, that is, the City of Weslaco received more than

2  $10,000 a year, okay?

3            DEFENDANT TAFOLLA:  Okay.

4            THE COURT:  So that's the first two parts.  Okay.

5            The next part is that you corruptly solicited,

6  that is, basically tried to get somebody to give you, that

7  you demanded, that you accepted or agreed to accept

8  something of value from somebody else.  So to "corruptly

9  demand or solicit" basically means to do it intentionally

10 with some unlawful purpose, that it was in done with the

11 intent to be influenced and that the value was 5,000 or

12 more.

13            Do you understand the charge here?

14            DEFENDANT TAFOLLA:  Yes.

15            THE COURT:  Do you have any questions whatsoever

16 about the charge?

17            DEFENDANT TAFOLLA:  No, Judge.

18            THE COURT:  Very good.  There are some things I

19 need to cover with you regarding this charge, Mr. Tafolla,

20 because this is what we call a "Criminal Information."  And

21 I think Ms. Garza was showing you the actual Information

22 there itself.  Okay.  So that Criminal Information in this

23 case, if you look at the third page there, it's signed by

24 the United -- the Assistant United States Attorney here and

25 also from, I guess, a second attorney here.

1          And so this is the Criminal Information.  This is

2    the charge itself, but because this is a felony offense, you

3    have the right to be charged by what we call an

4    "Indictment."   An Indictment is different from this because

5    this is just signed by the attorneys, not -- it has not gone

6    through the Grand Jury system.  So let me explain to you in

7    basic terms the Grand Jury system and you may know some of

8    this already, but it's important that you understand this.

9          The Grand Jury are citizens of this community, at

10   least 16.  They are -- have to charge an Indictment.  And

11   basically what happens is that the Government will present

12   to that Grand Jury information, evidence, testimony,

13   whatever they think they should present to that Grand Jury

14   and then the Grand Jury is the one that decides whether you

15   will be indicted.  So it's sort of like a screening process.

16   Somebody other than the Government is looking at it.

17         If the Grand Jury decides to issue an Indictment,

18   you are charged and it could be exactly like this except

19   that it's gone through the Grand Jury system.  This one has

20   not gone through the Grand Jury.  You do have the right when

21   you are being charged with a felony to have it go through

22   the Grand Jury.

23         Do you understand that first of all?

24         DEFENDANT TAFOLLA:  Yes, Judge.

25         THE COURT:  Now in this case because -- I've been

1   advised that you are ready to enter a plea here, that means

2   that you are not going through the Grand Jury system.

3          Do you also understand that?

4          DEFENDANT TAFOLLA:  Yes, Judge.

5          THE COURT:  Okay.  And so the question then,

6   Mr. Tafolla, is: do you wish to waive your right to have

7   this charge go through the Grand Jury system?

8          DEFENDANT TAFOLLA:  Yes.

9          THE COURT:  Do you want to give that up?

10         DEFENDANT TAFOLLA:  Yes.

11         THE COURT:  And you want to go forward here with

12  these -- with the Information?

13         DEFENDANT TAFOLLA:  Yes.

14         THE COURT:  Okay.  So the next thing to explain to

15  you about this Information, Mr. Tafolla, is that it was just

16  filed, I guess, about a week ago, more or less.  Even though

17  you're going to enter a plea here, this is like a trial and

18  that I will decide whether you are guilty.  In a few

19  moments, I'll explain to you some more of those rights, but

20  it's important that you understand that this is like a trial

21  in that regard.

22         You have the right to have at least 30 days to

23  prepare for a trial.  And obviously, here this was filed on

24  the 1st so it has not been 30 days.  So if you go forward

25  here today, you would also be giving up your right to have

1    at least 30 days to prepare for a trial.

2              So first of all, do you understand that you do

3    have the right to have at least 30 days to prepare for

4    trial?

5              DEFENDANT TAFOLLA:  Yes.

6              THE COURT:  And do you wish to go forward here

7    today with a plea and give up that right to have 30 days to

8    prepare for trial?

9              DEFENDANT TAFOLLA:  Yes.

10             THE COURT:  All right.  And again, Mr. Tafolla, if

11   there's any hesitation on any of this, this is the time to

12   tell me.  And you've worked out whatever agreement you've

13   worked out with the Government.  That's strictly between you

14   and the Government.  But if there is any hesitation as to

15   anything that you are doing here right now and answer to my

16   questions, this is the time to tell me because, as I said,

17   once you go through with a plea, it is just very hard to

18   come back and convince me that I should let you withdraw

19   that plea.

20             Do you understand that?

21             DEFENDANT TAFOLLA:  Yes, Judge.

22             THE COURT:  Okay.  Any questions so far, any

23   hesitation so far?

24             DEFENDANT TAFOLLA:  No, ma'am.

25             THE COURT:  Okay.  So let me touch then on a few

1   other things with you, Mr. Tafolla, as far as the rights

2   that you do have.  To begin with, you do have the right to

3   be represented by an attorney throughout this case, as you

4   are being represented here today, and you have the right

5   even if you cannot afford an attorney.

6              Do you understand that?

7              DEFENDANT TAFOLLA:  Yes, Judge.

8              THE COURT:  In this case, Ms. Garza, you were

9   retained or --

10             MS. GARZA:  That's correct, Your Honor.

11             THE COURT:  Okay.  In fact, if your ability to

12   hire a lawyer changes at any point in time, Mr. Tafolla, you

13   could always advise the Court and we will appoint an

14   attorney to represent you.

15             Do you understand that?

16             DEFENDANT TAFOLLA:  Yes, Judge.

17             THE COURT:  Okay.  You also have the right to

18   enter a plea of not guilty to the charge.  And if you wish

19   to enter a plea of not guilty, then the case and because

20   this is an information probably would go back to the Grand

21   Jury system for an Indictment, but nonetheless you would

22   have the right to have a jury trial.  The Jury is made up of

23   12 citizens of this community and the Jury is the one that

24   would decide whether you are guilty or not guilty.

25             You would also have the right to have the

1    witnesses presented, that is, whatever witnesses the

2    Government has to testify against you, to have those

3    witnesses presented to the -- give their testimony to the

4    Jury.  You would have the right through your attorney to ask

5    questions of those witnesses, that is, to cross-examine

6    those witnesses.

7            You would also have the right to present witnesses

8    of your own and to compel them, to make them be present to

9    testify even if they did not want to testify.

10           And you would have the right to testify as well,

11   if you wanted to testify.  If you chose not to testify, the

12   Jury would not consider that as evidence that you are guilty

13   or evidence of anything else.  In other words, you wouldn't

14   be found guilty just because you chose not to testify in

15   front of the Jury.  These are rights that you have, if you

16   wish to go forward with a plea of not guilty.

17           Do you understand this?

18           DEFENDANT TAFOLLA:  Yes, Judge.

19           THE COURT:  Now if you do enter a plea of guilty,

20   you are giving up your right to have a jury trial.  You are

21   giving up your right to have the witnesses presented, both

22   yours and the Government's except for yourself.  You'll

23   becoming witness in the case because the Government's

24   attorney will tell me the facts of your case, I will ask you

25   questions about those facts and you will have to answer

1    those questions for me.

2         Now I know you've been answering questions for me

3    already but those are very different questions because those

4    are questions going to your rights in this case.  Now when

5    I'm talking about you becoming a witness in your own case is

6    because I will ask you about the actual events that happened

7    here and you will have to answer those for me so you do give

8    up your right to remain silent.

9         Do you understand this?

10        DEFENDANT TAFOLLA:  Yes, Judge.

11        THE COURT:  With that understanding then, do you

12   want to give up your right to have a jury trial, your right

13   to have the witnesses presented, both yours and the

14   Government's, and your right to remain silent?

15        Do you want to give up those rights by entering a

16   plea of guilty?

17        DEFENDANT TAFOLLA:  Yes, Judge.

18        THE COURT:  Have you spoken with your attorney

19   about what you may be facing by way of punishment if you are

20   found guilty in this case?

21        DEFENDANT TAFOLLA:  Yes.

22        THE COURT:  Okay.  There's hesitation there and I

23   probably think I know why you're hesitating so let me touch

24   on that first and then if --

25        DEFENDANT TAFOLLA:  Sure.

1        THE COURT:  -- that's not the reason, I'll come

2   back to it because likely Ms. Garza did not tell you how

3   much time you actually get.

4        DEFENDANT TAFOLLA:  No, Judge.

5        THE COURT:  Hopefully, she did tell you what the

6   maximum amount of time that you are facing is.

7        Is that your hesitation?

8        DEFENDANT TAFOLLA:  That's correct.

9        THE COURT:  And that's because she can't tell you

10  how much time you will actually get.  She can tell you what

11  the law is and I -- in a moment I'll ask about the

12  Guidelines to see if she covered that with you as well.

13  But I am the one that decides your actual sentence and even

14  I can't tell you right now how much time you will actually

15  get.

16       What I will do is cover with you -- and probably

17  hopefully the same thing Ms. Garza covered with you -- what

18  the law provides here.  The law for this charge provides

19  that you can receive a sentence of up to 10 years of prison

20  time.  There's no minimum amount of prison time required,

21  but it can be up to 10 years.

22       The law also provides that you can be placed on

23  what we call "supervised release" for up to three years.  So

24  let me touch on what we call "supervised release" a little

25  bit more.  Basically supervised release is a period of time

1    if you are -- prison time.  It is after you have completed

2    your prison time, you are out under court supervision.  You

3    are ordered to do or not do certain things and any violation

4    of supervised release could result in you having to serve

5    more time in prison for this offense.  You would have to

6    come back to court.  I wouldn't just automatically send you

7    to prison, but you would have to come back to court

8    depending on the particular circumstances.  I could decide

9    to revoke your supervised release, that is, to take you back

10   into custody and order you to serve some more prison time.

11           Do you understand that?

12           DEFENDANT TAFOLLA:  Yes.

13           THE COURT:  Okay.  And I didn't ask this earlier

14   but, Mr. Tafolla, are you citizen of the United States?

15           DEFENDANT TAFOLLA:  Yes.

16           THE COURT:  All right.  Now in addition then to

17   the up to 10 years of prison time, the up to three years of

18   supervised release, the law also provides that you can be

19   ordered to pay a fine of up to $250,000 depending on whether

20   you can afford to pay.

21           The law requires you be ordered to pay $100 even

22   you cannot afford to do so.

23           Do you also understand this?

24           DEFENDANT TAFOLLA:  Yes, Judge.

25           THE COURT:  And then in this Information, you have

1   also been given what we call "Notice of Forfeiture."

2   "Forfeiture" is basically the term that's used for when the

3   Government seeks to take title to and possession of property

4   that somebody else may have an interest in.

5          In this case, the Government has let you know that

6   it is going to seek forfeiture of at least of $20,000 in

7   US currency, that is, in money, and is going to also seek a

8   money judgment to that effect so let me touch up on those a

9   little bit.  Obviously the forfeiture of $20,000 is not

10  necessarily a hard thing to understand.  It's pretty basic.

11  But the money judgment may be a little bit different from

12  what many people think of this kind of case.

13          Basically what that is, is that it will -- the

14  Government will be asking me, as part of this criminal case,

15  to enter a judgment by which you owe to the Government

16  $20,000.  That would be -- and sometimes people understand

17  that in the civil context where you get sued and the Jury or

18  the Judge says you have to pay $20,000, it would be the same

19  kind of money judgment where the Government has a judgment

20  against you for $20,000.

21          Now the Government is also letting you know that

22  if they're not able to get the $20,000, that they can then

23  seek to collect that through forfeiture of any property of

24  whatever sort that is not exempt.  There are some certain

25  protections, but it would be anything that's not exempt

1   here.  So that is as to forfeiture.

2          Now you do have certain rights when the Government

3   is seeking to take your property.  Those rights can be

4   asserted through this criminal case or it can be asserted

5   separately through what we call an "administrative

6   proceeding," that is, you can go in and assert that the

7   Government has no right to take these things.

8          Do you understand this part first?

9          DEFENDANT TAFOLLA:  Yes, Judge.

10          THE COURT:  Okay.  And is there a separate issue

11   as to forfeiture in this case, Mr. Lopez?

12          MR. LOPEZ:  There's not a separate issue --

13          THE COURT:  I mean, I'm sorry, as to restitution.

14          MR. LOPEZ:  Restitution, Your Honor, I believe

15   would, it is our opinion there's going to come a time we

16   would ask the Court to set the amount of restitution, Your

17   Honor, --

18          THE COURT:  Okay so.

19          MR. LOPEZ:  -- being for City of Weslaco.  But,

20   Your Honor, we do not have a finite number set at this point

21   in time.

22          THE COURT:  At this point.  Okay.  So the other

23   thing that is maybe a consequence here, Mr. Tafolla, is what

24   we call "forfeiture."  Excuse me, I keep saying "forfeiture"

25   -- restitution.  Restitution is a little bit different from

1  forfeiture.  Restitution is basically where you can be

2  ordered to make whole the City of Weslaco for their losses

3  as to the events that happened here.

4        Now there are I understand other individuals

5  involved in all of this.  When we are looking at restitution

6  when there are more than one person involved in that, each

7  one of those can be ordered to pay the whole amount of

8  restitution.  Even though it may be four people paying the

9  whole amount in this case, the City would never get four

10  times what they lost.  But amongst all four of them, they

11  can each be ordered to pay the full amount depending on the

12  particular circumstances.  And then once the City is paid in

13  whole even if it's only from one person, then the other

14  people sort of fight it out amongst themselves, okay?

15        But this is a case where, at some point in time,

16  the question of restitution will be addressed by the Court,

17  by me.  Therefore, you can also then be ordered to pay, as I

18  said, to the City of Weslaco the monies that they lost as a

19  result of the criminal activities here.

20        Do you understand this also?

21        DEFENDANT TAFOLLA:  Yes, Judge.

22        THE COURT:  Okay.  So I've covered with you then

23  sort of the consequences of entering a plea and being found

24  guilty to this charge.

25        The other thing I touched on a few moments ago is

1   what we call the "Guidelines."  The Guidelines are a way

2   that we come up with a range of months that the Court should

3   consider in deciding what sentence you should receive.  We

4   use a chart that looks like this, (indicating).

5          Did you talk with your attorney about the

6   Guidelines?

7          DEFENDANT TAFOLLA:  Yes.

8          THE COURT:  Okay.  And again, the Guidelines,

9   Mr. Tafolla, as I said are a way that we come up with a

10  range of months that I should consider in deciding your

11  actual sentence.  There's two things that are important for

12  you to understand.  One is that the Guidelines are advisory,

13  that is, I have to consider the Guidelines.  I do not have

14  to follow the Guidelines.  And we take information -- for

15  the Guidelines, we take information about the offense

16  itself.  Here I just -- and I didn't go back and look at

17  them, but I suspect that the primary factor that will decide

18  where you fall in the Guidelines is the amount of money

19  involved in this case.

20         I didn't ask, but I kind of would suspect that if

21  you have a criminal history, it's probably very minor.  But

22  we take information about the offense and we take

23  information about your criminal history and with that

24  information we come up with what we call your "guideline

25  range."

1          At the time of sentencing, I consider that in

2  deciding your actual sentence.  I consider anything else

3  that is presented to me about yourself, your background,

4  your family, your employment, your education, all of that I

5  consider.  I consider any other information presented to me.

6  In this case when we have, the City of Weslaco involved, I

7  can consider information presented to me in that regards to

8  the harm there.

9          I also consider the law that applies to sentencing

10 then I decide what sentence you should receive.  That

11 sentence can be within your guideline range whatever that

12 turns out to be.  It could less than that or it could be

13 more than that provided I do not sentence you to more than

14 the maximum, the 10 years that applies to this case.

15         So do you understand then as to the Guidelines, I

16 have to consider them but I do not have to follow them?

17         Do you understand that?

18         DEFENDANT TAFOLLA:  Yes, Judge.

19         THE COURT:  Okay.  The other important thing,

20 Mr. Tafolla, for you understand about the Guidelines is that

21 while I expect Ms. Garza to have given you a guideline range

22 that she believes will apply to your case, that is not a

23 promise or a guarantee.  I'm the one that decides what the

24 correct guideline range is.  I do not do that until the time

25 of sentencing.  So whatever she may have told you that she

1  believes will be your guideline range, it could turn out to

2  be different at the time of sentencing.

3            Do you also understand this?

4            DEFENDANT TAFOLLA:  Yes, Judge.

5            THE COURT:  Do you have any questions,

6  Mr. Tafolla, whatsoever?

7            DEFENDANT TAFOLLA:  No questions, Judge.

8            THE COURT:  You've understood everything I've

9  covered with you?

10           DEFENDANT TAFOLLA:  Yes, I have.

11           THE COURT:  Okay.  Any hesitation that you have?

12           DEFENDANT TAFOLLA:  No, Judge.

13           THE COURT:  All right.  Is there a Plea Agreement

14  as to Mr. Tafolla?

15           MR. LOPEZ:  Yes, Your Honor.  It reads in

16  pertinent part the Defendant agrees to plead guilty to

17  Count 1 of the Information pursuant to Title 18, United

18  States Code, Section 3663(a)(3).

19           The Defendant agrees and stipulates that at least

20  $20,000 represents the proceeds that the Defendant obtained

21  directly or indirectly as a result of his participation in

22  the charged violation and that the factual basis for his

23  guilty plea supports the forfeiture of $20,000.

24           The Defendant agrees to forfeit any of the

25  Defendant's property in substitution up to a total

1  forfeiture of $20,000.

2          And further, the Defendant agrees to the

3  imposition of a personal money judgment up to that amount.

4          And the Defendant agrees to make a complete

5  financial disclosure by truthfully executing a sworn

6  financial statement within 14 days and by authorizing the

7  release of all financial information requested by the United

8  States.

9          The Defendant agrees to authorize a release of all

10  financial information requested by the United States and to

11  take all steps necessary to pass clear title to forfeitable

12  assets to the United States and to fully assist in the

13  collection of restitution and fine including but not limited

14  to surrendering title, executing warranty deeds, signing

15  consent decrees, and signing any other documents to

16  effectuate the transfer of any assets.

17          In exchange, the Government will recommend that

18  the offense level decrease by two levels, pursuant to United

19  States Sentencing Guidelines, Section 3E1.1(a) if the

20  Defendant clearly demonstrates acceptance of responsibility.

21          THE COURT:  Mr. Tafolla, the Government has just

22  indicated that you have signed a Plea Agreement with the

23  Government.  I believe Ms. Garza has that there.

24          Can you confirm for me that you did, in fact, sign

25  that Plea Agreement?

1          DEFENDANT TAFOLLA:  Yes, I did, Your Honor.

2          THE COURT:  And did you review that with your

3     attorney before you signed it?

4          DEFENDANT TAFOLLA:  Yes.

5          THE COURT:  Okay.  Ms. Garza, if you would hand

6     that over?

7          The Government has read through the Plea

8     Agreement.  I'm going to sort of restate what the Government

9     just covered, Mr. Tafolla, is that basically that in

10    exchange for your plea of guilty to the Criminal

11    Information, you also agree that $20,000 is at least the

12    amount that you received in connection with the criminal

13    activity here, that you agree to forfeit that amount and to

14    basically provide to the Government the information, as

15    Mr. Lopez read through here, to assist them in the

16    collection of that amount.  So basically you are giving up

17    any rights that you may have here to claim to that amount of

18    money.

19         The Government will then recommend two points off

20    for what we call "acceptance of responsibility" on the

21    Guidelines that I talked about.

22         Do you understand that that is the agreement that

23    you have with the Government?

24         DEFENDANT TAFOLLA:  Yes.

25         THE COURT:  It's important, Mr. Tafolla, that you

1  understand that this Agreement between you and the

2  Government is only between you and the Government.  It is

3  not an agreement with the Court.  By that I mean that if you

4  do enter a plea of guilty and I find you guilty, your case

5  will be set for sentencing.

6          At the time of sentencing, I will consider the

7  recommendation made to me by the Government, but I do not

8  have to follow that recommendation.  And even if I do not

9  follow that recommendation, I do not have to allow you to

10 withdraw your plea of guilty.

11         Do you understand this?

12         DEFENDANT TAFOLLA:  Yes, Judge.

13         THE COURT:  Okay.  Other than the Agreement as set

14 out here, Mr. Tafolla, do you believe that there has been

15 any other promise of any sort made to you by anybody whether

16 it be the Government, your attorney or anybody else to get

17 you to plead guilty?

18         DEFENDANT TAFOLLA:  No, Judge.

19         THE COURT:  Has anybody threatened you or tried to

20 force you or coerce you into entering a plea of guilty?

21         DEFENDANT TAFOLLA:  No, Judge.

22         THE COURT:  Do you wish to enter a plea of guilty

23 freely and voluntarily?

24         DEFENDANT TAFOLLA:  Yes, ma'am.

25         THE COURT:  And do you wish to do so because you

1   are, in fact, guilty as charged in the Criminal Information?

2            DEFENDANT TAFOLLA:  Yes, ma'am.

3            THE COURT:  Any questions, Mr. Tafolla, anything

4   else that you want me to explain to you in any more detail

5   or any questions that you may have?

6            DEFENDANT TAFOLLA:  No, Judge.

7            THE COURT:  Very well.  Mr. Tafolla, then how do

8   you plead to this Criminal Information, guilty or not

9   guilty?

10            DEFENDANT TAFOLLA:  Guilty.

11            THE COURT:  Okay.  The next part now is where the

12   Government will tell me the facts.  Mr. Tafolla, listen

13   carefully.  Once I hear from the Government, I will ask you

14   a few questions.

15            MR. LOPEZ:  Yes, Your Honor.

16            Defendant Gerardo Tafolla is a resident of

17   Weslaco, Texas and an elected member of the Weslaco City

18   Commission since 2009.

19            Ricardo Quintanilla is a businessman who lived and

20   worked in Weslaco, Texas.

21            Leonel Julian Lopez, Jr. is a resident of Starr

22   County, Texas.

23            Company A is an international engineering and

24   construction company that performed large-scale

25   infrastructure projects for public and private clients.

1        Company B is an engineering company based in
2   San Antonio, Texas.  Person B is the owner of Company B.
3        Company C is an engineering company based in
4   McAllen, Texas.
5        At all relevant times, the City of Weslaco was a
6   political subdivision within the State of Texas.  Weslaco is
7   governed by a local government, which is a charter of the
8   City of Weslaco.
9        At all relevant times and during each of the
10  one-year periods beginning at least by 2011 and continuing
11  at least through 2016, Weslaco received benefits in excess
12  of $10,000 under a federal program involving a grant
13  contract subsidy loan guarantee insurance or other form of
14  federal assistance.
15       The Texas Constitution and the laws of the State
16  of Texas under the charter of the City of Weslaco
17  established ethical standards of conduct for elected public
18  officials including the Weslaco City Commissioners.  These
19  standards included an oath to faithfully execute the duties
20  of the office of the Commissioner and to preserve, protect
21  and defend the Constitution and laws of the United States
22  and the State of Texas.  Accordingly, Weslaco City
23  Commissioners owed a fiduciary duty to the City of Weslaco,
24  the Weslaco City Commission and the people of the City of
25  Weslaco.

1              As an official in the City Government, Tafolla

2       owed a fiduciary duty to the City of Weslaco and to its

3       citizens to perform the duties and responsibilities of his

4       office free from corrupt influence.  As an elected official

5       in the State of Texas, Tafolla swore to uphold the United

6       States Constitution, the Texas Constitution and the laws of

7       the State of Texas and faithfully execute the duties of his

8       office.

9              In or about 2004, the Texas Commission on

10      Environmental Quality, TCEQ, notified the City of Weslaco

11      that its Pharr treatment facilities were in violation of the

12      Texas environmental regulations.  The City's water treatment

13      facilities included the Water Treatment Plant, the "WTP,"

14      which process the City's potable water and the North

15      Wastewater Treatment Plant, the "NWWTP," and the South

16      Wastewater Treatment Plant, the "SWWTP."

17             In or about 2007, the Commission voted to issue

18      approximately 28 million in municipal bonds to finance

19      several infrastructure projects in the Weslaco area.  The

20      two largest and costliest projects to be paid for by the

21      bond funds were to rebuild the NWWTP and to perform repairs

22      to the WTP.

23             In or about 2008, the Commission hired Company A

24      to act as the construction manager for the infrastructure

25      project to be funded by the bond issuance.  Under the

1   Contract, Company A would effectively select the companies

2   to perform the infrastructure work to be paid for with the

3   bond fund.

4         Starting in or about August 2011 and continuing

5   through in or about December 2016 in the Southern District

6   of Texas and elsewhere, the Defendant, Gerardo Tafolla,

7   agreed that Lopez would accept bribe payments from Company

8   A, B and Company C.  Lopez then made payments to Quintanilla

9   via personal check.  Quintanilla then cashed those checks

10  and shared some of the cash with Tafolla.

11        From in or about December 15th, 2011 to in or

12  about October 22nd, 2014, Lopez wrote approximately 41

13  checks drawn on Lone Star National Bank accounts ending in

14  9303, 5069 and 9214 to Ricardo Quintanilla in the amount of

15  approximately $500 to approximately $5,000 each for a total

16  of $85,950 so that Ricardo Quintanilla could make bribe

17  payments to Tafolla.  Ricardo Quintanilla converted these

18  checks to cash at a Lone Star National Bank branch and

19  shared the cash with Tafolla.

20        During the relevant time period, the Defendant

21  received at least $20,000 in bribe payments to be used for

22  his own personal benefit.

23        In exchange for the bribe payments, Tafolla agreed

24  to and did use his official position as a Weslaco city

25  commissioner to take official acts to benefit and help

1   Company A, Company B and Company C obtain millions of

2   dollars in contracts from the City of Weslaco.  For example,

3   Tafolla took the following official acts in furtherance of

4   the bribery scheme.

5           On or about August 16th, 2011, Tafolla voted to

6   declare that the WTC was exceeding capacity and failing to

7   meet public water demand thereby creating an imminent threat

8   to public health and safety.  This declaration allowed the

9   Commission to bypass ordinary bidding and qualification

10  procedures to move forward with the construction to address

11  violations issued by the TCEQ.

12          On or about December 8th, 2011, Tafolla voted in

13  favor of a motion for the City Manager to negotiate a

14  contract with Company B for the design and expansion to the

15  WTP and associated projects.

16          On or about September 8th, 2011, Tafolla voted to

17  authorize the City Manager to negotiate a preconstruction

18  services contract with Company A for the WTP.

19          On or about October 6th, 2011, Tafolla voted to

20  approve a professional services agreement with Company B for

21  the design of the WTP and a professional services agreement

22  with Company A for the preconstruction services for the WTP.

23          On or about March 27th, 2012, Tafolla voted to

24  authorize the Mayor to execute a contract valued at

25  approximately 38.5 million with Company A for the expansion

1   of the WTP and to authorize city staff to amend the city

2   budget to accommodate the 38.5 million Contract with

3   Company A.

4          On or about June 5th, 2012, Tafolla voted to

5   approve the City of Weslaco's entering into a professional

6   services agreement with Company C.

7          On or about July 16th, 2013, Tafolla voted to

8   amend the City's Contract with Company B to authorize

9   Company B to prepare a preliminary engineering report for

10  repairs to the SWWTP.

11         In or about 2016, Lopez and Ricardo Quintanilla

12  and their co-conspirators provided Tafolla with questions to

13  ask of other city official which were intended to benefit

14  Company B during a dispute between the City of Weslaco and

15  Company B over the City of Weslaco's refusal to pay

16  Company B's invoices for the WTP.

17         Ricardo Quintanilla and Lopez and Tafolla and

18  their coconspirators used wire communications in interstate

19  commerce such as mobile messaging applications, email and

20  interstate bank transfers in furtherance of the scheme to

21  defraud.

22         THE COURT:  Mr. Tafolla, do you agree with what

23  the Government stated?  And if you're not -- Mr. Tafolla,

24  I'm sorry, this is the part where if you don't agree, this

25  is the time to tell me and --

1                    DEFENDANT TAFOLLA:  I --

2                    THE COURT:  I can't -- I need to hear from you,

3       Mr. Tafolla.  If you don't agree with something, this is the

4       time to tell me.

5                    DEFENDANT TAFOLLA:  It's basically towards the

6       end.

7                    THE COURT:  Okay.

8                    DEFENDANT TAFOLLA:  I didn't go to any other

9       commissioners and discuss any of this.

10                   THE COURT:  Okay.  So the part -- and I think I

11      know because I was watching you.  And so the last part where

12      he said that in 2016, Lopez, Quintanilla and the companies

13      provided you with questions to ask of the City

14      Commissioners.

15                   That's the part that you don't agree with?

16                   DEFENDANT TAFOLLA:  Right, because I --

17                   THE COURT:  Okay.  We'll come to that part in just

18      a moment.

19                   DEFENDANT TAFOLLA:  Okay.

20                   THE COURT:  Okay.  Everything else that the

21      Government stated, do you agree with that?

22                   DEFENDANT TAFOLLA:  Yes.

23                   THE COURT:  Okay.  So I need to cover with you

24      some certain basics and then at the end, we'll get to that

25      last part.

1          So first of all, you do admit that you were a city

2    commissioner during this period of time; is that correct?

3          DEFENDANT TAFOLLA:  Yes.

4          THE COURT:  And no question but that the City

5    itself is a local government and does receive -- Ms. Garza,

6    no question as far as a receipt of $10,000 during that --

7    during any one-year period; is that correct also?

8          Do you agree with that, Mr. Tafolla?

9          DEFENDANT TAFOLLA:  Yes.

10         THE COURT:  Okay.  And then you do admit,

11   Mr. Tafolla, that during this period of time beginning more

12   or less in 2011 and continuing through -- we'll cover the

13   2016 part in a moment, but continuing at least into 2014 and

14   the last date specifically was 2013, but continuing into

15   about the end of 2013, early 2014 that you were unlawfully

16   receiving these monies from -- it was going from Lopez to

17   Quintanilla to you; is that correct?

18         DEFENDANT TAFOLLA:  Yes, Judge.

19         THE COURT:  Okay.  And that you received at least

20   $20,000 in monies during this period of time; is that also

21   correct?

22         DEFENDANT TAFOLLA:  Approximately, yes.

23         THE COURT:  Okay.  And then the Government laid

24   out some specific dates, beginning more or less August of

25   2011 and the Government read several dates.

1          Excluding right now the 2016 date that they

2    referenced, you do admit that during this period of time you

3    took actions as a city commissioner that were favorable to

4    Company A, B and/or C; is that also correct?

5          DEFENDANT TAFOLLA:  Yes.

6          THE COURT:  Okay.  And that you were doing that,

7    at least in part -- and again, Mr. Tafolla, maybe that some

8    of this you thought really benefitted the City, but you were

9    doing this at least in part as a sort of receipt for the

10   monies that you had received or were receiving; is that also

11   correct?

12         DEFENDANT TAFOLLA:  Yes, Judge.

13         THE COURT:  Okay.  Now the last part, the way the

14   Government said it was that -- not that you necessarily went

15   to the Commissioners to ask these questions, but that you

16   received from Lopez, Quintanilla the questions that they

17   wanted you to ask of the Commissioners as it related to that

18   issue that was going on at the time.

19         Do you admit that you at least received the

20   questions?

21         DEFENDANT TAFOLLA:  I can't recall what questions

22   you're talking about.

23         THE COURT:  Okay.  All I'm going by is what the

24   Government says and so --

25         DEFENDANT TAFOLLA:  Okay.

1          THE COURT:  -- I don't have the questions here.

2   But the Government said that you -- that Quintanilla and

3   Lopez basically told you "Find out from the Commissioners

4   this," and I don't know the questions because I only heard

5   with the Government said.  And it's not whether you actually

6   went to the Commissioners to ask the questions, but they

7   were wanting you to get -- gather some information from the

8   other Commissioners as to that particular issue.

9          Do you agree with that or not?

10          MR. LOPEZ:  Your Honor, if I may?

11          THE COURT:  Uh-huh.

12          MR. LOPEZ:  It may help refresh some memory.

13   There were messages that were sent to the Defendant during

14   the course of the City of Weslaco's litigation with Company

15   B and they had proposed certain questions of the Defendant

16   to ask during -- either city officials or during the course

17   of council meetings, Your Honor.  The Government is not

18   saying --

19          THE COURT:  And the questions were sent via what?

20          MR. LOPEZ:  Text messages, Your Honor.

21          THE COURT:  Text messages.  Okay.

22          DEFENDANT TAFOLLA:  Okay.

23          MR. LOPEZ:  And we're not saying the questions

24   were actually asked, but that they were, as the Court noted,

25   provided to the Defendant.

1          MS. GARZA:  He remembers.

2          DEFENDANT TAFOLLA:  I do remember.

3          MS. GARZA:  Yes, you may.

4          DEFENDANT TAFOLLA:  Can I say?

5          THE COURT:  Yes, sir.

6          DEFENDANT TAFOLLA:  What I do remember is that

7     they called me just to try and get payments and I would go

8     to the engineer or the City Manager and, you know, just tell

9     him, you know, "Have you paid these people?"  That was it.

10         THE COURT:  So they were sending you or calling

11    you and basically asking you to sort of --

12         DEFENDANT TAFOLLA:  Maybe twice, maybe three

13    times.

14         THE COURT:  Okay.  Asking you to sort of find out

15    what was going on.

16         DEFENDANT TAFOLLA:  Yes, because at that time, the

17    City Manager was withholding all this --

18         THE COURT:  Okay.

19         DEFENDANT TAFOLLA:  -- because they knew there was

20    something wrong.

21         THE COURT:  Okay.

22         DEFENDANT TAFOLLA:  And I thought everything was

23    already -- the project was already built and it was ready to

24    go.

25         THE COURT:  And they were wanting you to basically

1  to sort of act on their behalf to find out what was going on

2  about these payments?

3           DEFENDANT TAFOLLA:  Not to find out, but just so

4  they -- just for them to get paid.

5           THE COURT:  Okay.

6           DEFENDANT TAFOLLA:  That's the only thing, I mean,

7  "Just tell them that we need to get paid because we haven't

8  gotten paid."  That was the extent.

9           THE COURT:  That was -- okay.  Now --

10          MR. LOPEZ:  Judge, there's one more thing I wanted

11  to clear up on the Record.  When we're talking about the

12  payments or at least when the Court was talking about the

13  payments with the Defendant, the Court mentioned the

14  payments in late 2013 and beginning into early 2014.  We

15  actually have payments that continued on up until

16  October 22nd, 2014 --

17          THE COURT:  All right.  Okay.  Well --

18          MR. LOPEZ:  -- and we just wanted that to be clear

19  on the Record.

20          THE COURT:  And, I'm sorry, I may have misstated,

21  but basically I was referencing the votes where the last

22  date you gave for a vote was 2013.

23          MR. LOPEZ:  Yes.

24          THE COURT:  So the votes were at least to July of

25  2013.  The payments continued thereafter.

1          MR. LOPEZ:  Yes.

2          THE COURT:  Do you agree with that, Mr. Tafolla?

3          DEFENDANT TAFOLLA:  Yes.

4          THE COURT:  Okay.  And these -- I think some of

5  them happened via -- as far as the sort of communications

6  here, some of them happened via telephone, text messages;

7  do you agree with that?

8          DEFENDANT TAFOLLA:  Yes.

9          THE COURT:  Okay.  And even though on your part,

10 you were receiving the money, not necessarily through a

11 bank.  There's no dispute here that the money was going

12 through a bank.  Mr. Lopez writing checks on Lone Star.

13 Mr. Quintanilla cashing those checks at a bank.

14          Do you agree with that as well?

15          DEFENDANT TAFOLLA:  Yes.

16          THE COURT:  All right.  Mr. Tafolla, the Court

17 does find that you are competent to enter a plea;

18          That you understand the nature of the charges

19 against you, as well as the consequences of entering a plea;

20          That you are entering a plea of guilty freely and

21 voluntarily;

22          And that there is a factual basis for the plea of

23 guilty.

24          The Court does find you guilty as charged in the

25 Criminal Information.

1          Your case will be set for sentencing on July the

2  10th, at 2:00 p.m.  A presentence investigation to be done

3  on May the 13th.  Objections to be filed by the 28th with a

4  final report due on June 11th.

5          Now the next question here is the issue of bond

6  since this has not been addressed whatsoever, correct?

7          MR. LOPEZ:  Yeah, that's correct, Your Honor.

8          THE COURT:  Okay.

9          MS. GARZA:  Yes, Your Honor.  I also a waiver of

10  Indictment.

11          THE COURT:  Oh, the waiver I do need please.

12          And has it been executed?

13          MS. GARZA:  No, Judge, and we --

14          THE COURT:  Okay.  Since I've covered that orally

15  with him, then -- Mr. Tafolla, I do want to make sure you've

16  read through that, but if you are ready to sign it, you can

17  go ahead and sign it.

18      (Pause in the proceedings.)

19          MR. LOPEZ:  Judge, there was one matter that we'd

20  like to take up at the Bench just to --

21          THE COURT:  Okay.  Just give me a moment.  Let

22  him --

23      (Pause in the proceedings.)

24          THE COURT:  Okay.  On the bond issue, what I would

25  like to do is send you over to whoever's on duty.

1          Who's on duty today?

2          THE CLERK:  Judge Hacker.

3          THE COURT:  Judge Hacker?  I'm going to send you

4    over to Judge Hacker.  I know that you're set up to -- but I

5    don't anticipate that there would be any problem with

6    Mr. Tafolla being out on bond.

7          MR. LOPEZ:  Your Honor, may we approach on that

8    issue as well?

9          THE COURT:  You may, yes.  Okay.

10       (Sealed Bench Conference held from 9:41 a.m. to

11   9:45 a.m.)

12         THE COURT:  Other than getting the hearing date

13   for the bond hearing, is there anything else at this point

14   in time as to Mr. Tafolla?

15         MR. LOPEZ:  Nothing from the Government.

16         MS. GARZA:  No, Your Honor.

17         THE COURT:  Okay.  All right.  Then, Ms. Garza,

18   Mr. Tafolla, and Mr. Lopez, if you will wait, Ms. Sanchez

19   will communicate with them and see what would be a good time

20   for this afternoon and then come up here with --

21         MS. GARZA:  Thank you, Your Honor.

22         DEFENDANT TAFOLLA:  Thank you, Your Honor.

23         THE COURT:  Thank you.  Then as to this matter, we

24   are concluded.

25         THE CLERK:  All rise.

1        (Hearing adjourned at 9:45 a.m.)

2                        * * * * *

3              I certify that the foregoing is a correct

4   transcript to the best of my ability produced from the

5   electronic sound recording of the proceedings in the above-

6   entitled matter.

7   /S/ MARY D. HENRY

8   CERTIFIED BY THE AMERICAN ASSOCIATION OF

9   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

10  JUDICIAL TRANSCRIBERS OF TEXAS, LLC

11  JTT TRANSCRIPT #60195

12  DATE FILED:  APRIL 15, 2019

13

14

15

16

17

18

19

20

21

22

23

24

25